## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEBRSAKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 1st Hospitality, LLC, | ) | Case No. BK 22-41002-TLS |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Tax I.D. No. 20-5583031 | ) | |

### MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, FED. R. BANK P. 6004, AND LOCAL R. BANK. P. 6004-1: (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN ASSETS OF DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, INTERCSTS, AND ENCUMBRANCES; (III) APPROVE AUCTION AND BID PROCEDURES AND (II) GRANTING RELATED RELIEF

COMES NOW 1st Hospitality, LLC, (the "Debtor"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), requests entry of an order authorizing and approving the sale of certain assets free and clearing of liens, claims, interests, and encumbrances authorized by this motion pursuant to sections 105(a), 363(b), and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 and 9013-1 of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules"). In support of this motion (the "Motion"), Debtor respectfully represents as follows:

### Jurisdiction and Venue

1. On November 22, 2022, (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Debtor continues to operate its business as Debtor and debtor-in-possession pursuant to §§ 1101, 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in the Chapter 11 Case, and no committees have been appointed or designated. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O), and Debtor consents to entry of a final order by the Court in connection with this Application to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

### Debtor's Background

3. Debtor is a hotelier that operates a hotel located at 117 Cody Avenue, Alliance, NE 69301.

4. As with millions of businesses throughout the United States in the past three years, the COVID-19 epidemic has taken its toll on Debtor's operations. This was and is particularly true for the hotel industry as a whole, which saw a nearly unrivaled downturn in business, leading one commentator to state, "as the COVID-19 crisis progresses, the impact to the travel industry is nine times worse than 9/11, with forecasted occupancy rates for 2020 hitting record lows worse than rates in 1933 during the Great Depression."[1]

---

[1] https://www.hotelmanagement.net/own/studies-break-down-covid-19-s-impact-hotels-travel-plans

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

Building on this economic devastation, another commentator has noted that "the hotel and hospitality industry is not expected to make a full recovery until 2024 after being devastated by the coronavirus pandemic."[2]

5.   During the Pandemic, Debtor unsurprisingly saw a decrease in revenues and occupancy rates, though Debtor did not see a proportionate reduction in its debt service obligations.  Debtor and the City of Alliance were not immune to these challenges and Debtor, ultimately, defaulted under the terms of its loan with Unity Bank and Debtor was left with little choice other than to seek protection under Chapter 11 in an effort to restructure and reduce its secured debts.

6.   Following consultation with Unity Bank, Debtor's senior lender, Debtor has reached the conclusion that it is in the interests of Debtor, its estate, and the creditors thereof, to sell certain assets described herein pursuant to public auction.

## Compliance with Rule 6004 and Local Rule 6004-1

7.   DEBTOR PROPOSES TO SELL ALL OR SUBSTANTIALLY ALL ITS ASSETS INCLUDING THE HOTEL AND ITS CONTENTS LOCATED AT ITS INVESTMENT PROPERTIES LOCATED AT 117 CODY AVENUE, ALLIANCE, NE 69301 (THE "PROPERTY").

8.   At this time, Debtor has not identified a specific buyer of assets.  Debtor intends to auction its Assets by way of public auction as described herein.  As such Debtor is not, by this Motion, seeking authority or permission to sell the Property to any particular person or entity on a final, non-reviewable basis at this time and will, pursuant to the procedure herein, request that the Court set a sale hearing following the conclusion of the auction to approve the sale as determined at the auction.

9.   The proceeds realized from any sale of assets will be used to first reduce Debtor's secured creditors (described below).  At this time, and until a sale occurs, Debtor cannot reasonably state or describe the extent to which the proceeds of sale will be used to benefit each class of creditors in this Chapter 11 Case, other than to submit that a reduction in secured debts leaves open the possibility of distributions to priority and unsecured creditors.

10.  The extent of the debtor's liabilities can be briefly described as follows:[3]

| Creditor | Type | Security | Amount | Basis |
|---|---|---|---|---|
| Unity Bank | Secured | DOT and UCC on all assets. | $1,136,457.16 | Scheduled |
| Northeast Bank | Secured | DOT and UCC on all assets. | $424,986.00 | Scheduled |
| Jayant Shan | Secured | DOT on Real Estate | Unknown | Scheduled |

---

[2] https://www.usnews.com/news/national-news/articles/2021-01-27/coronavirus-pandemic-sets-hotel-industry-back-10-years-report-finds

[3] Inclusion of liabilities descried in this Paragraph 11 is based upon available information, Debtor's bankruptcy schedules, and claims filed to date.  Inclusion on this list does not constitute an admission as to the validity, allowance, amount, or enforceability of any claim.  Debtor reserves all rights and defenses it possesses to any asserted claims scheduled or filed in this Chapter 11 Case.

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

| | | | | |
|---|---|---|---|---|
| IRS | Secured | Tax Lien | $56,241.80 | Claim |
| IRS | Priority | None | $122,104.73 | Claim |
| IRS | Unsecured | None | $40,766.47 | Claim |
| Box Butte County Treasure | Secured | Tax Lien | $203.07 | Claim |
| Nebraska Department of Labor | Priority | None | $572.31 | Claim |
| Nebraska DOR | Secured | Tax Lien | $59,707.98 | Scheduled |
| Other Secured Creditors | Secured | UCC on All Assets | Unknown | Scheduled |
| Other Priority Creditor | Priority | None | Unknown | Scheduled |
| Other Unsecured Creditors | Unsecured | None | $16,027.96 | Scheduled |

11. As this is a sale of all or substantially all Debtor's assets, there are unlikely to be any assets remaining of any appreciable value following the sale proposed hereby, other than possible causes of action under Chapter 5 of Title 11 of the Bankruptcy Code.

12. Debtor can project that there will be closing costs, real estate commissions, and other administrative expense claims associated with the sale of the Property and Debtor's bankruptcy case, but specific amounts are not available at this time.

13. At this time Debtor cannot reasonably determine the amount of taxable income Debtor may realize from the sale. However, it is possible that Debtor will incur taxable income as a result of the sale.

14. Debtor has a sound justification for moving to sell all or substantially all its assets outside the scope of a disclosure statement and plan of reorganization.

    a.   First, as part of ongoing efforts to address and resolve a pending motion for relief from the automatic stay filed by Unity Bank, Debtor has agreed to conduct a public auction of its assets in an effort to avoid foreclosure proceedings in the event Unity Bank's motion is granted.

    b.   Second, Debtor's operations are insufficient fund its ongoing operations and Debtor currently requires cash infusions from its owners to maintain operations.

    c.   Third, while Debtor believes future income could increase, the ongoing cash infusions are less and less feasibly as times goes by.

    d.   Fourth. Debtor believes that a controlled sale of an operating hotel is far more beneficial to Debtor and its state then would be a foreclosure of a shuttered business.

    e.   Lastly, Debtor believes its assets will garner the most value when sold together, as a going concern, rather than piecemeal or through a chapter 7 liquidation sale.

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

Debtor therefore submits that a controlled sale of assets is much preferable to the likely prospect of a foreclosure sale and that Debtor's decision to liquidate is both a reasoned and sound business decision at this time.

## Known Lien Holders And Notices Of Record

15.  Debtor obtained limited title reports on the Property from Missouri Rive Title.  A copy of this title report is attached hereto as Exhibit "A".[4]

## Authority to Sell Free and Clear of All Liens, Claims, Interests and Encumbrances

16.  Through this Motion, the Debtor seeks entry of an Order Authorizing and approving the proposed Auction and Bid Procedures (the "Auction Procedures") attached hereto as Exhibit B.

17.  The sale should be authorized pursuant to §363(b)(1) of the Bankruptcy Code.  Pursuant to §105(a), a bankruptcy court "may issue any order process or judgment that is necessary or appropriate to carry out the provision of [the Bankruptcy Code]."  Additionally, §363(b)(1) provides, in relevant part, that Debtor, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of its bankruptcy estate.

18.  The proposed use, sale, or lease of property of the state may be approved under §363(b) if it is supported by sound business justification. *See e.g. Meyers v. Martin (In Re Martin)*, 91 F.3d 389, 395 (3rd Cir 1996); *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In Re Continental Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or [a] debtor-in-possession . . . to satisfy its fiduciary duty to the . . . creditors, and equity holder[s], there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *Id.*).

19.  In reviewing a proposed sale of assets, a bankruptcy court should give deference to debtor's business judgment.  *Esposito v. Title Ins. Co. (In re Fernwood Mkts.)*, 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa 1987); *In Re Crutcher Resource Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the state other than in the ordinary course of business, but the movant must articulate some business justification for the sale"). *See also Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986*); In re Channel One Communications, Inc.*, 117 B.R. 493 (Bankr. E.D. Mo. 1990).

20.  In addition to showing a business justification, Debtor believes that courts, when reviewing a sale under §363, should also examine whether: (a) the price is fair and reasonable; (b) the purchaser has acted in good faith; and (c) adequate notice was provided.  *In re Channel One Communications, Inc.*, 117 B.R. at 496.

21.  By virtue of the fact that the Sale to the Successful Bidder(s) will be subject to a public auction subject to credit bids, the good faith of the Successful Bidder(s) and the reasonableness of the purchase price will be, *per se*, established.  If necessary, Debtor will present evidence that the sale hearing regarding the final approval for sale of the Property that the sale is fair and reasonable.  Debtor will also, if necessary, present evidence to establish that any sale of the Property will have been made and negotiated in good faith.

---

[4] Inclusion of liens and notices of record herein do not constitute an admission as to the validity or enforceability of the same.  Debtor reserves all rights and defenses it possesses to any asserted lien or claim.

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

22. The Court may review a proposed sale to determine whether parties received adequate notice of this Motion. Debtor will provide adequate notice of the hearing on this Motion by providing notice to all creditors in Debtor's case (the "Sale Notice"). The Sale Notice is reasonably calculated to provide timely and adequate notice to Debtor's major creditor constituencies.

23. Based on the forgoing, the sale satisfies all the requisite conditions for authorization under §363(b) of the Bankruptcy Code

24. Section 363(f) of the Bankruptcy Code provides: "The trustee / debtor-in-possession may sell property under subsection (b) or (c) of this section free and clear of any interests in such property of an entity other than the state, only if: (i) applicable non-bankruptcy law permits sale of such property free and clear of such interests; (ii) such entity consents; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in bona fide dispute; or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

25. Debtor submits that, with respect to each such interest, at least one of the five conditions of §363(f) is satisfied. Debtor accordingly will ultimately requests authority to convey the Property to the eventual buyer free and clear of all liens, claims, interests, and encumbrances, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured claims ("Interests").

### The Sale Will Satisfy the Requirements of 11 U.S.C. § 363(e)

26. Section 363(e) of the Bankruptcy Code provides: Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property…to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. Debtor submits that any Interests attached to the Property shall be adequately protected buy have such Interests attach to the proceeds realized from the sale with the same validity and priority as they had on the Petition Date.

### The Sale Will Satisfy the Requirements of 11 U.S.C. § 363(m)

27. Section 363(m) of the Bankruptcy Code provides that the "reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchases or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

28. The Bankruptcy Code does not define good faith. However, "[t]he criteria to be considered when making an evaluation of good faith are almost universally stated as follows: '[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a . . . good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *In re Apex Oil Co.,* 92 B.R. 847, 869 (Bkrtcy. E.D. Mo. 1988) (quoting *In re Rock Industries Machinery Corp.,* 572 F.2d 1195, 1998 (7th Cir. 1978)).

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

29.  If necessary, Debtor will present evidence at any hearing on the sale that the proposed sale was made in good faith.  Debtor, therefore, requests that the Court make a finding that the buyer has purchased the Asset in good faith within the meaning of §363(m) of the Bankruptcy Code.

WHEREFORE, 1st Hospitality LLC, debtor and debtor-in- possession in the above captioned Chapter 11 Case, respectfully prays this Court enter an order: (1) granting this Motion; (2) overruling all objections to this Motion; (3) approving and authorizing the sale of the Property free and clear of all Interests pursuant to the procedures contained herein; and (4) granting any other relief at equity or law this Court deems necessary.

**1st Hospitality, LLC, Debtor.**

By:/s/ *Patrick R. Turner*
TURNER LEGAL GROUP, LLC
Patrick Turner (NE Bar No. 23461)
139 S. 144th Street, Suite 665
Omaha, Nebraska 68010
Telephone: (402) 690-3675
pturner@turnerlegalomaha.com

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEBRSAKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 1st Hospitality, LLC, | ) | Case No. BK 22-41002-TLS |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Tax I.D. No. 20-5583031 | ) | |

**EXHIBIT A TO MOTION FOR INTERM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, FED. R. BANK P. 6004, AND LOCAL R. BANK. P. 6004-1: (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN ASSETS OF DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, INTERCSTS, AND ENCUMBRANCES; (II) APPROVE AUCTION AND BID PROCEDURES AND (II) GRANTING RELATED RELIEF**



## LIMITED TITLE REPORT

**FILE NO:   SB0008224**

**TO:      Turner Legal Group, LLC**
**          Patrick Turner**

Nebraska Title Company, authorized to engage in the business of abstracting in the State of Nebraska under Certificate of Authority No. 662, hereby certifies that the records of Box Butte County, Nebraska have been carefully examined with reference to the following described property, and from such examination finds as follows:

**LEGAL DESCRIPTION:**

Lot One (1), Subdivision of Block Six (6), SYNDICATE ADDITION to the City of Alliance, Box Butte County, Nebraska.

 Address:  117 Cody Avenue, Alliance, NE 69301

**GRANTEE IN LAST DEED OF RECORD:**

1st Hospitality LLC

**UNRELEASED LIENS OF RECORD:**

Trust Deed with Power of Sale dated September 27, 2006, filed September 29, 2006 in Book 238, Page 749, executed by 1st Hospitality LLC to Leo Dobrovolny, Attorney at Law, Trustee and Unity Bank, Beneficiary, securing the sum of $1,488,000.00.  NOTE: James M. Carney, Attorney at Law was appointed successor trustee under said Deed of Trust by Substitution of Trustee filed April 27, 2010 in Book 263, Page 734; NOTE:  Kent A. Hadenfeldt, Attorney at Law was appointed successor trustee under said Deed of Trust by Substitution of Trustee filed October 11, 2012 in Book 280, Page 435; NOTE: Patrick M. Heng, Attorney at Law was appointed successor trustee under said Deed of Trust by Substitution of Trustee filed October 1, 2018 as Inst. No. 2018-1278.  COPIES

Assignment of Leases and Rents dated September 27, 2006, filed September 29, 2006 in Book 238, Page 754, between 1st Hospitality LLC, a Nebraska limited liability company, Assignor and Unity Bank, Assignee.  COPY

Deed of Trust dated August 17, 2007, filed August 20, 2007 in Book 246, Page 141, executed by 1st Hospitality LLC, a Nebraska limited liability company to Terry Curtiss, Trustee and Business Lenders, LLC, a Delaware limited liability company, Beneficiary, securing the sum of $514,000.00.  NOTE:  Michael J. Whaley, Attorney at Law was appointed successor trustee under said Deed of Trust by Substitution of Trustee filed November 3, 2016 as Inst. No. 2016-1457; NOTE:  Said Deed of Trust was assigned to Northeast Bank by Assignment of Deed of Trust filed August 7, 2020 as Inst. No. 2020-1066. COPIES

Collateral Assignment of Leases and Rents dated August 17, 2007, filed August 20, 2007 in Book 246, Page 150, between Business Lenders, LLC, a Delaware limited liability company, Lender and 1st Hospitality LLC, Guarantor.  COPY

Mortgage dated June 5, 2009, filed June 8, 2009 in Book 258, Page 655, executed by 1st Hospitality LLC, a Nebraska limited liability company to Jayant Shah and Rupa Shah, securing the sum of $200,000.00. COPY

Federal Tax Lien claimed by U.S. Treasury, Internal Revenue Service against 1st Hodpitality LLC (Anupam Dave MBR), in the stated amount of $5,149.86, dated March 3, 2015, recorded March 17, 2015 as Inst. No. 2015-427.

Federal Tax Lien claimed by U.S. Treasury, Internal Revenue Service against 1st Hodpitality LLC (Anupam Dave MBR), in the stated amount of $10,509.08 dated November 1, 2017, recorded November 28, 2017 as Inst. No. 2017-1495.

Federal Tax Lien claimed by U.S. Treasury, Internal Revenue Service against 1st Hodpitality LLC, a Partnership, in the stated amount of $25,568.47, dated February 1, 2020, recorded March 20, 2020 as Inst. No. 2020-433.

State Tax Lien claimed by Nebraska Department of Revenue against 1st Hospitality LLC (Alliance Hotel & Suites), in the stated amount of $59,707.98, dated October 14, 2022, recorded October 18, 2022 as Inst. No. 2022-1560.

COPIES TAX LIENS

**JUDGMENTS OR TRANSCRIPTS OF JUDGMENTS:**

 NONE

**TAXES/ASSESSMENTS:**

   Parcel ID No.: 070104379

   2020 and all prior years - PAID
   2021 in the amount of $23,040.64 - PAID

   Assessed Value: $1,250,000.00

**EASEMENTS AND RESTRICTIONS OF RECORD:**

 NOT RESEARCHED

**Effective Date: October 21, 2022 at 8:00 am**

**Nebraska Title Company**

*Vicki M Williamson*

By

Registered Abstracter

**Please direct inquiries to:** Brandon Harder

**NOTE: THIS IS AN INFORMATIONAL TITLE REPORT**

**This report is not a guarantee or warranty of title, nor is it an abstract of title, nor is this a commitment to provide, nor does it provide title insurance.  Liability hereunder is expressly limited to the sum of $1,000.00.**

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEBRSAKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 1st Hospitality, LLC, | ) | Case No. BK 22-41002-TLS |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Tax I.D. No. 20-5583031 | ) | |

## EXHIBIT B TO MOTION FOR INTERM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, FED. R. BANK P. 6004, AND LOCAL R. BANK. P. 6004-1: (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN ASSETS OF DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, INTERCSTS, AND ENCUMBRANCES; (II) APPROVE AUCTION AND BID PROCEDURES AND (II) GRANTING RELATED RELIEF

Assets to be Sold

All assets of Debtor are being offered for sale (the "Assets"), including:

(1) all assets identified in the Debtor' bankruptcy schedules;

(2) all inventory, whether finished, work in process or raw materials;

(3) all intellectual property rights;

(4) all contractual or leasehold rights to be assume and assigned by Debtor; and

(5) all assets acquired by the Debtor after the filing of this bankruptcy case.

Provided however, that Debtor, unless otherwise agreed to in writing, will not be offering for sale its cash, accounts receivable, causes of action possessed or owned by Debtor (including any recoveries related thereto), causes of action existing under the bankruptcy code, including Title 5 thereof (including any recoveries related thereto); and any assets that have been sold by Debtor during the pendency of this bankruptcy case.

Auction, Generally

Debtor will conduct a public auction of Debtor's assets located at 117 Cody Avenue, Alliance, NE 69301 (the "Property") through Scott Moore and Lee and Associates ("Auctioneer"), which shall direct and preside over the auction in a commercially reasonable manner.  The auction shall be open to the general public.

Auction Date

The Property will be sold at public auction to be conducted on May 15, 2023, with bidding open through closing of the Auction or an alternate date agreed upon in writing, and at a time and location to be reasonably agreed upon by the Debtor and Auctioneer.

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

<u>Qualification of Bidders</u>

Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by Debtor in consultation with Unity Bank and Auctioneer, in order to participate in the Bidding Process, each interested person or entity must meet the below requirements to be considered a Qualified Bidder:

    a.  At the time of the Auction, any Qualified Bidder, in order to receive a bid number, must:

        i.  Provide written evidence of the bidder's proof of funds, which may be in the form of a pre-qualification letter without any financing contingencies, current bank statements, sworn financial statements, and the like.

        ii.  deliver to an enforceable Auctioneer a Purchase and Sale Agreement ("Sale Agreement") executed by such bidder, which does not contain any financing contingencies, a copy of which is attached hereto as Exhibit A.

        iii.  A deposit (a "Deposit") in the amount of $5,000.00 immediately available funds payable to Debtor, which shall be: (i) if by certified check, retained by the Auctioneer and/or Debtor's attorneys; or (ii) if by wire transfer, held in escrow by an escrow company designated prior to the Auction Date by Debtor, not subject to the claims, liens, security interests or encumbrances of any party, except as specified herein. Deposits shall be returned to all Qualified Bidders other than the Successful Bidder(s) and the Back-up Bidder(s): (i) if by certified check, at the time the Auction closes; or (ii) if held by the escrow company, within three (3) business days after the close of the Auction. If the sale of the Assets to the Successful Bidder closes, the Successful Bidder's Deposit shall be applied to the purchase price at closing in accordance with the purchase agreement between Debtor and such Successful Bidder, and, within three (3) business days after the closing of the Sale to the Successful Bidder, the Back-up Bidder's Deposit shall be returned. If a Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder and Debtor is not then in material breach of the purchase agreement, Debtor will not have any obligation to return the Deposit deposited by such Successful Bidder and such Deposit will irrevocably become the property of Debtor and shall not be credited against the purchase price of the subsequent buyer (in addition to Debtor reserving all other rights and remedies against the Successful Bidder). In such instance, the Back-up Bidder's deposit shall be applied to the purchase price at closing of the Sale with the Back-up Bidder.

    b.  Debtor may modify waive, or impose additional Participation Requirements for certain Participants in its sole and absolute discretion or at the request of the seller, here the Debtor.

<u>Due Diligence</u>

Debtor shall afford each interested party due diligence access to the Assets and Debtor' business. Due diligence access may include management presentations as may be scheduled by Debtor, access to data rooms, on-site inspections and such other matters that an interested party may reasonably request. Requests for due diligence materials/inspections must be directed to the Auctioneer and/or Debtor. The Auctioneer may conduct one or more open houses at the Property as well.

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

<u>Right to Credit Bid</u>

Unity Bank may make one or more credit bids for some or all of the Assets securing their allowed claims to the fullest extent permitted by §363(k) of the Bankruptcy Code.  Unity Bank shall be permitted to credit bid all or a portion of their respective debts as part of their respective or collective credit bid at or prior to the Auction (defined below), subject to §363(k) of the Bankruptcy Code, and shall not be required to post a Deposit in any case.  A credit bid by Unity Bank (as to any portion(s) of the Assets or all of the Assets) and all higher credit bids made by Unity Bank during the Auction shall be deemed in all respects equal in value, and in its economic effect on Debtor's estate, to an all-cash bid in an amount equal to the face value of such credit bid on a dollar-for-dollar basis.  Provided however that the total accepted credit bid or bids of the Lenders can never exceed the amount Unity Bank is owed, plus any recoverable fees as of the auction date and any assessments of costs and expenses allowed by order of the Bankruptcy Court under 11 U.S.C §506(c).

Subject to §363(k) of the Bankruptcy Code, Unity Bank may credit bid notwithstanding that a final order allowing such Unity Bank's claims against Debtor may not be entered prior to the Auction.  To the extent necessary, the Bankruptcy Court may estimate the amount of Unity Bank's claim(s) pursuant to 11 U.S.C. §502(c) for purposes of determining the maximum amount of credit bid(s).

Other than as set forth in this section, notwithstanding anything contained in the Bidding Procedures to the contrary, nothing herein will in any way impair, alter or otherwise affect the right of the Lenders to "credit bid" pursuant to §363(k) of the Bankruptcy Code.

<u>"As Is, Where Is"</u>

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Debtor, its agents or its estate, other than a warranty of title.  By submitting a bid, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures.

<u>Free and Clear of Any and All Interests</u>

Except as otherwise provided in the Successful Bidder's purchase agreement, all of Debtor' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon other than any implied restrictive covenants that run with land (collectively, the "Interests") to the maximum extent permitted by §363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets, which proceeds shall be paid directly to Unity Bank, to the extent of Unity Bank's secured prepetition indebtedness and any post-petition indebtedness allowed by order of the Bankruptcy Court, and any remaining proceeds shall be paid to the Debtor.

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

<u>The Auction and Auction Procedures</u>

An auction (the "Auction") shall be conducted at a time and place to be identified and beginning at 10:00 a.m. (Central Standard Time) on May 15, 2023, or such other place and time as Debtor shall notify all interested parties.

At the Auction, bidding will begin at the purchase price stated in the highest or otherwise best Qualified Bid (the identity of which shall be announced by the Auctioneer and/or Debtor at the commencement of the Auction), and will subsequently continue in minimum increments to be determined at the discretion of Debtor in consultation with Auctioneer. The bidding shall be continuous and competitive and shall not end until all bidders have submitted their last and best offers. Qualified Bidders will be permitted to increase their bids at the Auction, in accordance with the terms hereof, as many times as they wish.

As soon as practicable after the conclusion of the Auction, Debtor shall, with the consultation with Unity Bank and the Auctioneer identify the highest or otherwise best offer(s) for the Assets (to the extent any such bid is acceptable to Debtor each a "Successful Bid" and each bidder making such bid, a "Successful Bidder") and the second highest and best offer for the purchase of the Assets (the "Back-up Bid" and the bidder making such bid, the "Back-up Bidder"); provided however, that the selection of a Successful Bid that is for less than the amount of any credit bid or bids offered by Unity Bank or that could be offered by Unity Bank for the Assets or any portion thereof is subject to the Lenders' consent.

<u>Acceptance of Qualified Bids</u>

Debtor shall sell the Assets to any Successful Bidder only upon the approval of a Successful Bid by the Bankruptcy Court after the Sale Hearing. Debtor' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Debtor' acceptance of the bid. Debtor will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

<u>Sale Hearing</u>

A hearing to approve the Sale (the "Sale Hearing") will be scheduled and noticed by separate order of the Bankruptcy Court. At the Sale Hearing, Debtor, in consultation with Unity Bank, may present any Successful Bids to the Bankruptcy Court for approval or, in the event of any default by any such Successful Bidder, the Back-up Bid. Debtor reserves all rights not to submit any bid that is not acceptable to Debtor for approval to the Bankruptcy Court. Following the approval of the Sale of all or a portion of the Assets to any Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved Sale, Debtor shall be authorized, but not required, to deem the Back-up Bid (including a credit bid by Unity Bank), as disclosed at the Sale Hearing, the Successful Bid, and Debtor shall be authorized, but not required, to consummate the sale with the Back-up Bidder without further order of the Bankruptcy Court. Debtor, in the exercise of its business judgment, in consultation with Unity Bank, reserve its rights to change the date of the Sale Hearing in order to achieve the maximum value for the Assets without notice other than by announcement of the adjournment at the Sale Hearing.

Objections, if any, to the Sale shall be filed on the docket of the Bankruptcy Court and shall be served such that each objection is actually received by Debtor and any other parties so ordered by the Bankruptcy Court on or before any date established by the Bankruptcy Court.

IN THE MATTER OF
1st Hospitality, LLC
Case No. BK 22-41002
Motion to Sell

<u>Modifications</u>

If necessary to satisfy fiduciary duties, Debtor, in consultation with Unity Bank, may amend or supplement these Bidding Procedures at any time in any manner that is consistent with these Bidding Procedures and will best promote the goals of the auction.

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this **"Agreement"**) is made and entered into as of _____ (the **"Effective Date"**), by and between _____. (the **"Seller"**) and _____ (**"Purchaser"**) with reference to the following.

## RECITALS

A.      Seller has commenced cases (lead case number 22-41002-TLS) (the **"Bankruptcy Case"**) under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* as amended (the **"Bankruptcy Code"**) by filing a voluntary petition in the United States Bankruptcy Court for the District of Nebraska (the **"Bankruptcy Court"**).  The date of commencement of the Bankruptcy Case is referred to in this Agreement as the **"Petition Date."**

NOW, THEREFORE, in consideration of the foregoing and the agreements of the parties set forth herein, Seller and Purchaser agree as follows.

1.  PURCHASE AND SALE OF ASSETS.  On and subject to the terms and conditions stated in this Agreement, Seller shall sell to Purchaser the Assets identified in Exhibit A (the **"Assets"**) to Purchaser and Purchaser shall purchase the Assets from Seller

2.  ---RESERVED---.

3.  PURCHASE PRICE AND DEPOSIT AND PRORATIONS.

3.1 Payment.  The purchase price (the **"Purchase Price"**) for the Assets will be the sum of $_____ .  The Purchase Price will be payable by wire transfer of immediately available funds at the Closing described below.

3.2 Deposit.  Purchaser has delivered by certified check or deposited by wire transfer with Seller's Counsel or DRI Title and Escrow ("Escrow Company"), the sum of $5,000, in the form of cash or other immediately available funds payable to Seller (together with all interest thereon, the **"Deposit"**) to be held in escrow.   At Closing, the Deposit shall be delivered to the Seller and credit it against the Purchase Price or shall return the Deposit before then as set forth herein.

3.3 Real Estate Taxes.  Total real estate taxes for 2022, due and payable in 2023 shall be prorated on an annual basis as of the Closing Date and credited to Purchaser at closing, and real estate taxes thereafter shall be the responsibility of the Purchaser.

3.4 Recording Fees.  It is contemplated that this sale is governed by a court order entered pursuant to the United States Bankruptcy Code and the sale of Seller's real property is no subject to the Nebraska Documentary Stamp Tax fees pursuant to Neb. Rev. Stat. §76-902.

4.  REPRESENTATIONS AND WARRANTIES.

4.1 Seller's Representations and Warranties.

4.1.1   As Is / Where Is.  The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Seller, its agents or its bankruptcy estate, other than a warranty of title.  By submitting this contract, Purchaser shall be deemed to

acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith.  After execution of this Agreement, there will no further right of inspection of the Property until after the Closing contemplated hereby; provided however, that Purchaser may be entitled to a final walkthrough of the property to ensure that no material damage to the Property has occurred between the execution of this Agreement and the Closing.

4.2 Purchaser's Representations and Warranties.  Purchaser represents to Seller that, as of the Effective Date:

4.2.1   Organization.  Purchaser is duly formed, validly existing and in good standing under the laws of the state of its organization.

4.2.2   Authority/Consent.  Purchaser possesses all requisite power and authority, has taken or will by Closing have taken all actions required by its organizational documents and applicable law, and has obtained all necessary consents, to execute and deliver this Agreement and to consummate the transactions contemplated in this Agreement.

4.2.3   Nature of Transaction.  The purchase of the Assets is not contingent upon financing of any nature or kind.

5.   COVENANTS PRIOR TO CLOSING.

5.1 Insurance.  Any risk of loss to the Assets shall be borne by the Seller until the Closing Date.  In the event, prior to closing, the structures on the Property are materially damaged by fire, explosion or any other cause, Purchaser shall have the right to rescind this agreement, and Seller shall refund the Deposit to Purchaser.  Purchaser agrees to provide his own hazard insurance.

6.   CONDITIONS PRECEDENT TO CLOSING.

6.1 Conditions Precedent to Purchaser's Obligations to Close.  Purchaser's obligation to purchase the Assets is subject to satisfaction on or before the Closing Date (as such date may be extended as provided herein) of the following conditions, any of which may be waived in writing by Purchaser in Purchaser's sole and absolute discretion:

6.1.1   Covenants.  Seller shall have performed and observed in all material respects all covenants of Seller under this Agreement.

6.2 Conditions Precedent to Seller's Obligation to Close.  Seller's obligation to sell the Assets is subject to satisfaction, on or before the Closing Date (as such date may be extended as provided herein) of the following conditions, any of which may be waived in writing by Seller in Seller's sole and absolute discretion:

6.2.1   Covenants.  Purchaser shall have performed and observed, in all material respects, all covenants of Purchaser under this Agreement.

6.2.2    <u>Representations and Warranties</u>.  All representations and warranties of Purchaser set forth in this Agreement shall be true and correct in all material respects as if made on the Closing Date.

6.3 <u>Bankruptcy Conditions</u>. The obligations of each Party to consummate the transactions contemplated by this Agreement shall be subject to:

6.3.1    <u>Entry of Order Approving Sale</u>.  The entry the Bankruptcy Court shall have entered a final non-appealable order authorizing the free-and-clear sale of the Assets to Purchaser pursuant to this Agreement (the "**Sale Order**"), which among other things, pursuant to sections 105, 363 and 365 of the Bankruptcy Code that:

6.3.1.1 approves this Agreement and authorizes the sale of the Assets by Seller to Purchaser on the terms set forth herein free and clear of liens pursuant to 11 U.S.C. §363(f);

6.3.1.2 provides that the sale of the Assets vests Purchaser with all right, title and interest of Seller in, to and under the Assets free and clear of all encumbrances and on an "AS IS" and "WHERE IS" basis, without any representations or warranties of any kind (including no representations or warranties as to merchantability, fitness or use) other than those specifically set forth in this Agreement;

6.3.1.3 finds that Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and is entitled to the protections thereof;

6.3.1.4 finds that the sale of the Assets to Purchaser pursuant to the terms of this Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the states in which Seller is incorporated and any other applicable non-bankruptcy laws;

6.3.1.5 provides that the provisions of the Sale Order are non-severable and mutually dependent; and

6.3.1.6 authorizes Seller to execute such other documents and instruments and take such other actions as may be reasonably necessary or appropriate to allow the consummation of the transactions contemplated hereby.

6.4 <u>Failure of a Condition</u>.

6.4.1    In the event that any condition precedent to Closing in this Section 6 has not been satisfied on or before the Closing Date, then the party whose conditions to Closing have not been satisfied (the "**Unsatisfied Party**") shall give notice to the other of the condition or conditions which the Unsatisfied Party asserts are not satisfied.  In such notice the Unsatisfied Party shall also elect either (i) to extend the Closing Date for a reasonable period of time (not to exceed twenty (20) days) to allow the satisfaction of the applicable condition, or (ii) to terminate this Agreement, whereupon neither party shall have any further rights or obligations hereunder (other than any obligations of either party that expressly survive termination), except if such failure of a condition is due to a default by one of the parties, in which event the non-defaulting party shall have those rights and remedies set forth in Article 9.

6.4.2    If the transaction contemplated by this Agreement closes, then the parties shall be deemed to have waived any and all unmet or unsatisfied conditions, other than any unmet or unsatisfied conditions arising out of a breach by either party of any of its representations and warranties hereunder of which the other party has no knowledge as of Closing.

7.  <u>CLOSING</u>.

　　7.1 <u>Closing Date</u>.  The consummation of the transaction contemplated hereby (the "**Closing**") will take place at the office of Seller's counsel in Omaha, Nebraska, within three business days after entry of the Sale Order by the Bankruptcy Court (the "**Closing Date**").   The Closing may be performed "by mail" so as not to require the physical presence of the parties at the applicable location.

　　7.2 <u>Seller's Obligations at the Closing</u>.  At the Closing, Seller will do, or cause to be done, the following:

　　　　7.2.1 <u>Closing Documents</u>.  Seller shall execute, acknowledge (if necessary) and deliver originals of the following documents:

　　　　　　7.2.1.1 A Debtor-in-Possession deed

　　　　　　7.2.1.2 A Bill of Sale; and

　　　　　　7.2.1.3 A certified, recordable copy of the Sale Order.

　　　　7.2.2 <u>Possession</u>.  Seller will deliver possession of the Assets.

　　7.3 <u>Purchaser's Obligations at the Closing</u>.  At the Closing, Purchaser will do, or cause to be done, the following:

　　　　7.3.1 <u>Payment of Purchase Price</u>.  At Closing, Purchaser will pay to Seller the Purchase Price, less the Deposit, in immediately available funds.

8.  <u>RISK OF LOSS, DAMAGE, CONDEMNATION.</u>

　　8.1 <u>Risk of Loss</u>.  Risk of loss for damage to the Assets, or any part thereof, by fire or other casualty from the Effective Date through the Closing Date will be on Seller, except for any damage or liabilities caused by Purchaser, its agents, representatives, invitees, employees or contractors.

　　8.2 <u>Damage</u>.  If, prior to the Closing, all or a material portion of the Assets is damaged by fire or any other cause whatsoever, Seller shall promptly give Purchaser written notice of such damage.

9.  <u>REMEDIES AND ADDITIONAL COVENANTS</u>.

　　9.1 <u>Seller Default</u>.  In the event Seller fails to perform any of its covenants in any material respect, and such breach or failure shall continue for a period of ten (10) Business Days after notice thereof from Purchaser, then Purchaser's sole and exclusive remedies shall to terminate this Agreement by giving written notice thereof to Seller prior to or at the Closing, in which event the Deposit shall be returned to Purchaser, and, after the return to Purchaser of the Deposit, neither Seller nor Purchaser will have any further rights or obligations under this Agreement, except for any obligations that expressly survive termination.  In no event whatsoever shall Purchaser be entitled to any damages, rights or remedies against Seller as a result of any default of Seller hereunder, other than as specifically set forth in this Agreement.

9.2 <u>Purchaser Default</u>.    The parties acknowledge and agree that Seller should be entitled to compensation for any detriment suffered if Purchaser breaches any of its representations or warranties or fails to perform any of its covenants in any material respect but agree that it would be extremely difficult to ascertain the extent of the actual detriment Seller would suffer as a result of such breach and/or failure. Consequently, if Purchaser breaches any of its representations or warranties (other than breaches of representations or warranties resulting from (i) changes in Purchaser's knowledge and/or (ii) conditions or events outside of Purchaser's reasonable control), fails to perform any of its covenants in any material respect, or otherwise defaults in its obligations hereunder, and such breach, failure or other default shall continue for a period of ten (10) Business Days after notice thereof from Seller (it being agreed, however, that such notice and cure period shall not be applicable to (a) Purchaser's failure timely to deliver the Deposit the Bank or (b) Purchaser's failure timely to consummate this Agreement), then Seller shall be entitled to terminate this Agreement by giving written notice thereof to Purchaser prior to or at the Closing, in which event the Deposit shall be irrevocably retained by Seller.   Nothing herein shall be construed as a waiver of any other any of Seller's rights and remedies afforded by law or equity, and may be exercised concurrently, independently or successively.

10. <u>BROKERAGE COMMISSION</u>.

      10.1    <u>---Excluded---</u>

11. <u>NOTICES</u>.

      11.1    <u>Written Notice</u>.  All notices, demands and requests which may be given or which are required to be given by either party to the other party under this Agreement must be in writing.

      11.2    <u>Method of Transmittal</u>.  All notices, demands, requests or other communications required or permitted to be given hereunder must be sent (i) by United States certified mail, postage fully prepaid, return receipt requested, (ii) by hand delivery, (iii) by Federal Express or a similar nationally recognized overnight courier service, (iv) by facsimile with both telephonic confirmation and a confirmation copy delivered by another method set forth in this Section, or (v) by electronic mail, with receipt confirmed by the receiving party.  All such notices, demands, requests or other communications shall be deemed to have been given for all purposes of this Agreement upon the date of receipt or refusal, except that whenever under this Agreement a notice is either received on a day which is not a Business Day or is required to be delivered on or before a specific day which is not a Business Day, the day of receipt or required delivery shall automatically be extended to the next Business Day.

      11.3    <u>Addresses</u>.  The addresses for proper notice under this Agreement are as follows:

      <u>If to Seller</u>:

      With a copy to:

If to Purchaser:

_____
_____
_____

With a copy to:

_____
_____
_____

Either party may from time to time by written notice to the other party designate a different address for notices within the United States of America.

12. ASSIGNMENT.

Neither party shall have the right to assign this Agreement without the prior written consent of the other, which consent may be granted or withheld in the sole and absolute discretion of the party whose consent has been requested; provided, however, that at Closing Purchaser shall have the right to assign this Agreement to any entity that controls, is controlled by or is under common control with, Purchaser.  Any attempted assignment of this Agreement in violation of the foregoing sentence shall, at the option of the non-assigning party, be void and without force or effect.

13. MISCELLANEOUS.

13.1    Entire Agreement.  This Agreement embodies the entire agreement between the parties and cannot be varied except by the written agreement of the parties and supersedes all prior agreements and undertakings.

13.2    Modifications.  This Agreement may not be modified except by the written agreement of the parties.

13.3    Gender and Number.  Words of any gender used in this Agreement will be construed to include any other gender and words in the singular number will be construed to include the plural, and vice versa, unless the context requires otherwise.

13.4    Captions.  The captions used in connection with the Articles, Sections and Subsections of this Agreement are for convenience only and will not be deemed to expand or limit the meaning of the language of this Agreement.

13.5    Successors and Assigns.  This Agreement will be binding upon and inure to the benefit of the parties hereto and, subject to Article 122, their respective legal representatives, successors and assigns.

13.6    Controlling Law.  This Agreement will be construed under, governed by and enforced in accordance with the laws of the State of Nebraska.

13.7    Exhibits.  All exhibits, attachments, annexed instruments and addenda referred to herein will be considered a part hereof for all purposes with the same force and effect as if copied verbatim herein.

13.8    No Rule of Construction.  Seller and Purchaser have each been represented by counsel in the negotiations and preparation of this Agreement; therefore, this Agreement will be deemed to be drafted by both Seller and Purchaser, and no rule of construction will be invoked respecting the authorship of this Agreement.

13.9    Severability.  In the event any one or more of the provisions contained in this Agreement (except the provisions relating to Seller's obligations to convey the Assets and Purchaser's obligation to pay the Purchase Price, the invalidity of either of which shall cause this Agreement to be null and void) are held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability will not affect any other provisions hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had not been contained herein, provided, however, that the parties hereto shall endeavor in good faith to rewrite the affected provision to make it (i) valid and (ii) consistent with the intent of the original provision.

13.10    Time of Essence.  Time is important to both Seller and Purchaser in the performance of this Agreement, and both parties have agreed that TIME IS OF THE ESSENCE with respect to any date set out in this Agreement.

13.11    Business Days.  **"Business Day"** means any day on which business is generally transacted by banks in the jurisdiction in which the Assets are situated.  If the final date of any period which is set out in any paragraph of this Agreement falls upon a day which is not a Business Day, then, and in such event, the time of such period will be extended to the next Business Day.

13.12    No Memorandum; Confidentiality.  Purchaser and Seller agree not to record this Agreement or any memorandum hereof.  Purchaser agrees to hold the Property Information in strict confidence, and will not disclose such information to any person other than directors, officers, employees and agents of each, as well as to consultants, banks or other third parties working with Purchaser in connection with the transaction, in each case who need to know such information for the purpose of consummating this transaction.  This prohibition will not be applicable to disclosure of information required by applicable law, rule or regulation and will survive the termination of this Agreement for one (1) year, but will not survive a Closing to Purchaser.

13.13    Attorneys' Fees and Costs.  In the event either party is required to resort to litigation to enforce its rights under this Agreement, the prevailing party in such litigation will be entitled to collect from the other party all costs, expenses and attorneys' fees incurred in connection with such action.

13.14    Counterparts and Expiration of Offer.  This Agreement may be executed in multiple counterparts which shall together constitute a single document.  However, this Agreement shall not be effective unless and until all counterpart signatures have been obtained.  An unsigned draft of this Agreement shall not be considered an offer by either party.

13.15    Waiver of Jury Trial.  EACH PARTY HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY EITHER PARTY IN CONNECTION WITH ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE RELATIONSHIP OF SELLER AND PURCHASER HEREUNDER, PURCHASER'S OWNERSHIP OR USE OF THE PROPERTY, AND/OR ANY CLAIMS OF INJURY OR DAMAGE.

13.16    Anti-Money Laundering.  Purchaser hereby represents its compliance with all applicable anti-money laundering laws, including, without limitation, the USA Patriot Act, and the laws administered

by the United States Treasury Department's Office of Foreign Assets Control, including, without limitation, Executive Order 13224 (the "**Executive Order**").  Purchaser further represents (a) that it is not, and it is not owned or controlled directly or indirectly by any person or entity, on the SDN List published by the United States Treasury Department's Office of Foreign Assets Control and (b) that it is not a person otherwise identified by government or legal authority as a person with whom a U.S. Person is prohibited from transacting business.  As of the date hereof, a list of such designations and the text of the Executive Order are published under the internet website address www.ustreas.gov/offices/enforcement/ofac. Purchaser covenants and agrees to deliver to Seller any certification or other evidence requested from time to time by Seller in its reasonable discretion confirming Purchaser's compliance with this Section. Notwithstanding any other provision of this Agreement, the provisions of this Section shall survive Closing.

[signatures follow on next page]

IN WITNESS WHEREOF, the parties have executed this Purchase and Sale Agreement as of the date first written above.

**SELLER**:

By: _____
Name: _____
Title:_____

**PURCHASER:**

By: _____
Name: _____
Title:_____

## FORM OF SALE ORDER

[to be attached]